GRAVES, Presiding Justice,
Dissenting:
¶ 25. I disagree with the majority’s finding that service of process on Blood-good failed to comply with Rule 4(c)(5), and therefore I dissent. I would find that service of process was sufficient under Rule 4(c)(5) for the following reasons: the certified mailing containing the summons and complaint was returned to the sender ■with the marking “Unclaimed Refused” (a marking including the word “Refused”); it is undisputed that the address at which the U.S. Postal Service attempted to deliver the mailing was the correct address; the Postal Service documented that it had attempted to deliver the mailing at that address on three separate occasions; the Postal Service documented that it had provided notice of each of those attempted deliveries to the addressee; and lastly, Bloodgood evidently was made aware of the summons and complaint, because she filed an answer. These facts, in aggregate, adequately support the trial judge’s finding that Bloodgood was effectually served.
¶ 26. The marking of “Unclaimed Refused” is ambiguous, but it is just as reasonable, if not more so, for a sender of mail to conclude that such a marking indicates that the mailing was refused as it is for a sender to conclude that the mailing was simply unclaimed. The Postal Service defines “Refused” as “[ajddressee refused to accept mail or pay postage charges on *1053 it.” United States Postal Service, Domestic Mail Manual (DMM), § 507, Exh. 1.4.1, http://pe.usps.com/text/dmm300/507. htm# wpl112866 (last accessed Jan. 8, 2010). The Postal Service defines “Unclaimed” as “[a]ddressee abandoned or failed to call for mail.” Id. See also Jones v. Flowers, 547 U.S. 220, 245, 126 S.Ct. 1708, 1725, 164 L.Ed.2d 415 (2006) (“ ‘Unclaimed’ ... may indicate that an intended recipient has simply failed or refused to claim mail.”). Based on those definitions, which are readily available to the public, it is just as rational, if not more so, to conclude that a mailing marked “Unclaimed Refused” was refused rather than simply unclaimed.[2]
¶ 27. In addition, regardless of what a sender thinks the “Unclaimed Refused” marking indicates in terms of what actually happened when the Postal Service attempted delivery, the sender reasonably could conclude, as it did in the instant case, that the “Unclaimed Refused” marking fulfills Rule 4(e)(5)’s requirement that the returned mailing be marked “Refused.”
¶ 28. I agree with the majority that a mailing marked “Unclaimed” (and not “Unclaimed Refused”) cannot be said to satisfy the requirement of Rule 4(c)(5) that a returned mailing be marked “Refused;” however, until the Postal Service clarifies the meaning of “Unclaimed Refused” or Rule 4(c)(5) is amended to clarify that such a marking is insufficient under the Rule, the “Unclaimed Refused” marking must be analyzed as the new, distinct term that it is. Whether it fulfills the requirement of Rule 4(c)(5) can be determined only through consideration of the circumstances in each specific case.
¶ 29. In the instant case, the “Unclaimed Refused” marking, in conjunction with the other relevant facts, supports a finding that Bloodgood was effectually served. As noted above, it is undisputed that the address at which the Postal Service attempted to deliver the mailing was the correct address; the Postal Service documented that it had attempted to deliver the mailing at that address on three separate occasions; the Postal Service documented that it had provided notice of each of those attempted deliveries to the addressee; and Bloodgood evidently was made aware of the summons and complaint, because she filed an answer. From these facts, despite Bloodgood’s claims to the contrary, it is most logical to conclude that Bloodgood either outright refused the mailing or effectively refused it by failing to retrieve it from the post office after receiving notices that the post office was *1054 holding it for her.[3] Therefore, I would find that service of process was sufficient under Rule 4(c)(5).
¶ 30. Accordingly, I must dissent and would affirm the trial court’s order finding that service upon Bloodgood was complete and effective on or about January 1, 2006.
WALLER, C.J., AND KITCHENS, J., JOIN THIS OPINION.

. While use of the majority's definitions of "Refused” and "Unclaimed" would not affect my conclusions, it should be noted that the majority includes no citation for its definitions.
Furthermore, the two cases the majority cites as support for the assertion that “ 'unclaimed' and 'refused' ... have different meaning and effect under our rules” do not necessarily support that statement. The two cases—Jones v. Flowers, 547 U.S. 220, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006), and Young v. Huron Smith Oil Co., 564 So.2d 36 (Miss.1990)—neither mention the term “Refused” nor contrast the term "Refused” with the term "Unclaimed.”
In addition, Jones v. Flowers did not unequivocally state, as the majority suggests, that a certified mailing returned as "unclaimed” is insufficient service of process to satisfy constitutional due process requirements. Rather, as the majority more or less notes in its explanatory parenthetical to the Jones case, Jones held that "when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so.” Jones, 547 U.S. at 225, 126 S.Ct. 1708. In other words, the Jones court was ruling on the sufficiency of process in one specific situation, and it also noted that additional process was due only if practicable.

. The fact that Leatherwood made numerous unsuccessful attempts to serve Bloodgood personally is further evidence that Bloodgood was attempting to avoid acceptance of the summons and complaint.